RECEIVED
IN ALEXANDRIA, LA.
MAR 12 2010
TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

---

| | |
|---|---|
| CMC STEEL FABRICATORS, INC. d/b/a CMC CONTRACTORS | CIVIL ACTION NO. 08-212 |
| VERSUS | JUDGE TRIMBLE |
| RK CONSTRUCTION, INC. and RONALD CALHOUN | MAGISTRATE JUDGE HAYES |

---

### MEMORANDUM RULING

Before the court is a motion for summary judgment by plaintiff CMC Steel Fabricators, Inc. d/b/a CMC Contractors ("CMC").[1] Also before the court is CMC's subsequent Motion to Strike Affidavit of Ronald Calhoun.[2] For the reasons expressed below, the court finds that the motion to strike should be GRANTED in its entirety and the motion for summary judgment should be DENIED.

### I.  BACKGROUND

Ambling Construction Co., LLC ("Ambling") was awarded a $33,295,000 construction contract to build a new student housing complex at Grambling State University at Grambling, Louisiana in October of 2006. The project included construction of seven (7) student dormitories, a clubhouse and other related improvements such as parking lots.

---

[1] R. 44.

[2] R. 85.

1

Defendant Ronald Calhoun ("Calhoun") learned of the Grambling project and decided to submit a bid for a subcontract for concrete and foundation work on behalf of RK Construction, Inc. ("RK"), of which he is the sole shareholder. Calhoun obtained a copy of the project plans from Ambling and approached Lofland Company of Louisiana ("Lofland"), now CMC,[3] a manufacturer of reinforced steel and sheet metal ("Rebar"), concerning the amount and price of the rebar needed for the project. CMC drafted a proposal,[4] dated September 18, 2006, which quoted a price of $134,708 for 65 tons of rebar, cut, bent, bundled and tagged.[5] Calhoun used CMC's price quote to formulate his bid for the subcontract. Ambling eventually awarded RK the subcontract.

RK completed a credit application at CMC on October 16, 2006.[6] Calhoun also executed a "Continuing Guaranty (Individual)" on October 16, 2006, which made Calhoun jointly and severally liable for all debts and liabilities owed by RK to CMC.[7] Additionally, Ambling executed a "Joint Check Agreement" on November 9, 2006 in which it guaranteed payment for all rebar ordered by RK in conjunction with the Grambling project.[8]

Thereafter, RK made two orders of rebar from CMC: one order of 23,832 pounds for $14,542.62 in November of 2006 and a second order of 35,185 pounds for $22,375.58 in December

---

[3] Lofland merged into CMC Steel Fabricators, Inc., a Texas corporation, on February 22, 2007. R. 1 at fn. 1.

[4] R. 44-3 at pp. 1-2.

[5] Id. at p. 1.

[6] "CMC Construction Services Confidential Credit Application" R. 44-4 at p. 1; "Authorization to use Non-Business Consumer Credit Report" R. 44-4 at p. 2.

[7] R. 44-4 at pp. 3-4.

[8] R. 44-6.

of 2006.[9] The parties do not dispute that RK made payment for these two orders.[10]

Calhoun claims that he contacted CMC in December of 2006 to order a third shipment of rebar, but was told by CMC employee Johnny Young that, due to a shortage of staff and the intervening holidays, CMC would not be able to provide this third shipment as quickly as it provided the first two orders.[11] Thereafter, RK placed an order for rebar with another manufacturer.[12] On or about February 15, 2007, Calhoun informed CMC that it found another rebar supplier and, thus, would not be placing further orders with CMC.[13]

CMC forwarded written demands for payment of $100,760.21, the amount it claims remains due under the contract between the parties.[14] Defendants deny that any balance is owed to CMC under the theory that the documents executed among them did not constitute a perfected contract, but rather, an estimate for prospective purchases.[15]

CMC filed suit against RK and Calhoun in February of 2008 seeking a judgment in the full amount of the balance claimed, plus 1.5 % interest per month from the date when the balance became due, along with all reasonable attorney fees under law and contract and other just and

---

[9] Bills of Lading and Invoices dated 11/10/2006 and 12/01/2006. R. 44-7 at pp. 5-8.

[10] Copies of checks by Ambling made payable to RK and CMC jointly. R. 44-7 at pp. 1-2.

[11] R. 77-1 at p. 2.

[12] Id.; R. 44-2 at p. 5. Testimony by CMC employee Dee Griffith indicates that the balances may have become overdue at certain points before being paid by Ambling via joint check to RK and CMC. See Deposition of Griffith [R. 78-5] at pp. 8-10.

[13] Id.

[14] R. 44-9, 44-10.

[15] Memorandum in opposition by RK and Calhoun [R. 77] and memorandum in opposition by Ambling [R. 78].

equitable reliefs.[16] CMC was granted leave and amended its complaint, adding Ambling as a defendant in January of 2009.[17] Thereafter, Ambling was granted leave and filed its cross claim against RK and Calhoun.[18] CMC amended its complaint a second time in order to demonstrate the existence of diversity jurisdiction.[19] CMC amended its complaint and third and fourth time in September of 2009, further specifying the relief sought from RK, Calhoun and Ambling.[20]

CMC filed the instant motion for summary judgment, alleging that no genuine issue of material fact exists as to the amount owed by defendants under what it argues is a valid, perfected contract under Louisiana law. Additionally, CMC filed the instant motion to strike the affidavit of Calhoun,[21] which was filed in support of RK and Calhoun's memorandum in opposition to CMC's summary judgment motion, asserting that the new affidavit is incomplete and contradicts prior deposition testimony in an effort to manufacture material fact questions to preclude summary judgment.

We consider these motions below.

---

[16]R. 1 at pp. 4-5.

[17]R. 24, 26.

[18]R. 36 - 38.

[19]R. 47. The court has reviewed the record and is satisfied that CMC has demonstrated that complete diversity exists among the parties to this suit and that the amount in controversy exceeds $75, 000 as is required for our exercise of jurisdiction under 28 U.S.C. § 1332.

[20]R. 66, 67.

[21]Motion to strike [R. 85]; affidavit of Calhoun [R. 77-1].

4

## II. LAW OF SUMMARY JUDGMENT

CMC's first motion requests summary judgment pursuant to Fed. R. Civ. P. 56. In ruling on such a motion, we must determine whether the "...pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any show that there is no genuine issue as to any material fact..."[22]

A "material fact" is one which, given its resolution in favor of one party or another, might affect the outcome of the suit under applicable law.[23] An issue is considered "genuine" when the evidence leaves open the possibility that a rational trier of fact might still return judgment in favor of the nonmoving party.[24]

Once the moving party has carried its burden of showing an absence of evidence to support the non-moving party's case, the burden shifts to the non-party to come forward with specific facts showing a genuine factual issue for trial.[25] "Conclusory denials, improbable inferences, and legalistic argumentation" are not an adequate substitute for specific facts showing that a genuine issue of material fact remains to be tried.[26] Evidence presented, whether in support of or in opposition to a motion for summary judgment, must be of such character that it would be admissible

---

[22] Fed. R. Civ. P. Art. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); American Home Assurance Co. v. United Space Alliance, 378 F.3d 482, 486 (5th Cir. 2004).

[23] Anderson, supra, 477 U.S. 242, 248.

[24] Hamilton v. Segue Software, Inc., 232 F.3d 473, 477 (5th Cir. 2000), citing Anderson, supra, 477 U.S. 242, 248.

[25] Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[26] SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993).

at trial.[27] Where both parties have presented contradictory evidence, the court will resolve all such controversy in favor of the non-moving party, viewing the facts and evidence in the light most favorable thereto. General averments will not suffice, however, in place of specific factual proofs, as the court will not assume the existence of any material fact issue not pled by the non-moving party.

If the moving party fails to demonstrate the absence of material fact questions or if the non-moving party, on the other hand, succeeds in demonstrating the existence of such questions, the motion must be denied.

## III. ANALYSIS

CMC seeks a judgment in the amount of the balance due on what it claims is a valid and enforceable contract of sale. The parties agree that the issues involved in this suit are governed by Louisiana law. Having examined the documents at issue and the arguments of the parties, the court agrees, finding that the purported contract was executed in Louisiana between three Louisiana entities and contemplated performance in Louisiana.

Under Louisiana law, a sale is a contract whereby a person transfers ownership of a thing to another for a price in money.[28] A valid sale in Louisiana requires concurrence on three elements: the thing sold, the price to be paid and the consent of the parties.[29] Consent of the parties is

---

[27]Fed. R. Civ. P. Art. 43(a); <u>Roucher v. Traders & General Ins. Co.</u>, 235 F.2d 423, 424 (1956).

[28]La. Civ. C. Art. 2439.

[29]La. Civ. C. Art. 2439.

established by offer and acceptance.[30] A contract of sale is incomplete without a meeting of the minds between the parties as to the object and price.[31]

In cases involving contract disputes, the goal of the court is to determine the common intent of the parties.[32] When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.[33] The court must seek the common intent from the four corners of the contract itself.[34] However, when the terms of a written contract are ambiguous, uncertain or the intent of the parties cannot be ascertained from the contractual provisions, parol or extrinsic evidence is admissible to clarify the common intent of the parties.[35] Whether or not a contract is ambiguous is a question of law.[36]

CMC asserts that the proposal, Continuing Guaranty and Joint Check Agreement (collectively "agreements") executed among the parties constitute, collectively, a valid and enforceable contract of sale under Louisiana law. Specifically, CMC claims that these agreements represent a lump sale under La. Civ. C. Art. 2458, which provides that

> when things are sold by weight, tale or measure,
> ownership is transferred between the parties when
> the seller, with the buyer's consent, weighs, counts

---

[30] La. Civ. C. Art. 1927.

[31] La. Civ. C. Art. 2456.

[32] La. Civ. C. Art. 2045.

[33] La. Civ. C. Art. 2046.

[34] Id.; Chevron U.S.A., Inc. v. Belco Petroleum Corp., 755 F.2d 1151 (5th Cir. 1985).

[35] Id.

Smith v. American Family Life Assur. Co. of Columbus, 584 F.3d 212 (5th Cir. 2009) (citing Am. Marine Underwriters, Inc. v. Holloway, 826 F.2d 1454, 1456 (5th Cir. 1987).

> or measures the things.
>
> When things, such as goods or produce, are sold in a lump, ownership is transferred between the parties upon their consent, even though the things are not yet weighed, counted, or measured.

CMC asserts that, pursuant to Art. 2458, the contract of sale was perfected upon execution, even though the rebar was not yet individuated and delivered. CMC also cites La. Civ. C. Art. 2456, contemplating a valid sale even when the parties agree as to the object and price, but the object is not yet delivered and the price is not yet paid, as further authority for its argument.

CMC urges summary judgment in its favor on the basis that it has demonstrated a valid and perfected contract of sale and was willing and able to provide the rebar to RK under the contract. Moreover, CMC claims that the judgment in the amount of the remaining balance due on the contract should be against RK, Calhoun and Ambling jointly and severally pursuant to the Continuing Guaranty and Joint Check Agreement.

Defendants deny that the agreements constitute a valid contract of sale, arguing instead that the proposal,[37] though signed by Calhoun on behalf of RK, is incomplete, lacking four (4) of its six (6) original pages. Defendants assert that, given the inherent ambiguity of the incomplete contract, parol evidence should be considered in order to determine the common intent of the parties.

In support of this argument, defendants offer the affidavit of Calhoun,[38] in which he attests that it was never his intention to obligate RK, Ambling or himself to purchase all of the rebar needed for the Grambling project from CMC. Instead, Calhoun states that he believed he was given a price

---

[37] R. 44-3 at pp. 1-2.

[38] R. 77-1.

quote to aid him in formulating a project bid and that the Continuing Guaranty and Joint Check Agreement were necessary in order to open a credit account, which would enable RK to purchase rebar for the project as needed.[39] Accordingly, defendants argue that there was no requisite meeting of the minds and, thus, no contract of sale was perfected.

CMC now moves to strike Calhoun's affidavit on the basis that it contradicts Calhoun's prior deposition testimony and is only offered in an attempt to manufacture an issue of material fact to defeat summary judgment.[40] CMC points to the following prior deposition testimony as evidence of the contradiction.

> Q   But you understood by signing this that this was a proposal and an agreement by Lofland Company to supply the steel needed for the Grambling job. Correct?
>
> A   Correct.
>
> Q   And you, by signing this, accepted that Lofland was going to provide that steel. Correct?
>
> A   Correct.[41]

Citing <u>Copeland v. Wasserstein, Parella & Company, Inc.</u>,[42] among other Fifth Circuit cases, CMC asserts that, because Calhoun's affidavit conflicts with his prior sworn testimony, the affidavit should be stricken from the record.

In <u>Copeland</u>, the Fifth Circuit cited the established rule that

---

[39] <u>Id.</u>

[40] R. 85.

[41] R. 44-5 at 32:20 - 33:1.

[42] 278 F.3d 472 (5th Cir. 2002).

> when the sole evidence purporting to create a genuine issue of material fact and thus to preclude summary judgment is an affidavit that conflicts with deposition testimony, we have required an explanation of that conflict.[43]

The court examined Copeland's affidavit, which contained testimony directly contradicting prior deposition testimony and found that plaintiff offered no explanation for the contradiction and affirmed the district court's assessment of the affidavit as "'basically self-serving, indeed, not supported by his own sworn testimony at other times.'"[44]

Ambling cites <u>Kennett-Murray Corp. v. Bone</u>,[45] an earlier Fifth Circuit ruling, as authority that the mere presence of a contradiction between two sworn testimonies does not mandate that the court disregard the later-filed evidence. In that case, the appellate court found that the district court's disregard of Bone's affidavit, simply on the basis that it conflicted with his prior deposition testimony, was error. The court held that, although a credibility issue may be raised by the two conflicting testimonies, it was not a proper basis for disregarding the affidavit altogether. Comparing its ruling with the Second Circuit ruling in <u>Perma Research & Development Co. v. Singer, Co.</u>[46] and the Ninth Circuits's ruling in <u>Radobenko v. Automated Equipment Corp.</u>,[47] the court observed that <u>Perma</u> and <u>Radobenko</u> involved a district court finding that the affidavit at issue was a "sham." The <u>Bone</u> court found that, while the affidavit in its case was far from ideal, it was not a "transparent

---

[43]<u>Id.</u> at 482 (<u>citing</u> <u>S.W.S. Erectors, Inc. v. Infax, Inc.</u>, 72 F.3d 489 (5th Cir. 1996).

[44]<u>Id.</u>

[45]622 F.2d 887 (5th Cir. 1980).

[46]410 F.2d 572 (2nd Cir. 1969).

[47]520 F.2d 540 (9th Cir. 1975).

sham" and, thus, should not be automatically disregarded.[48]

Ambling argues that, in light of Bone, this court should not disregard Calhoun's affidavit because it is not a sham and is not the sole evidence of a genuine issue of material fact surrounding the purported contract. Ambling points to the deposition testimony of Matt Fagan, a CMC employee, stating that a sales representative was not authorized to enter into a contract with a purchaser until that purchaser is approved by the credit department, as evidence that there can be no valid contract in this case, given that the Continuing Guaranty and Joint Check Agreement were executed on October 16, 2006, nearly one month after the proposal was generated on September 18, 2008.[49] Ambling also reurges the significance of the missing pages of the proposal, which are said to contain the terms of the contract, as further evidence of ambiguity and the existence of genuine issues of fact as to the intent of the parties.

As suggested by defendants, we find that we must examine the totality of the evidence before we can determine whether or not CMC's motion to strike should be granted. Our review of the proposal at issue in this case reveals that it is, indeed, missing four (4) of its six (6) total pages. The proposal's first page contains an acceptance signature block, which is signed by Calhoun, but not dated.[50] Since, at the time the proposal was generated on September 18, 2006, Calhoun would not have known whether or not he would be awarded the subcontract by Ambling (Ambling itself was

---

[48] Bone, 278 F.3d at 894 (quoting Choudry v. Jenkins, 559 F.2d 1085, 1090 (7th Cir. 1977)).

[49] Deposition of Matt Fagan [R. 78-2] at 21:15 - 22:7.

[50] Signed CMC Proposal [R. 44-3] attached as "Exhibit A" to CMC's motion.

11

not officially awarded the role of general contractor until on or about October 1, 2006),[51] the court can only conclude that Calhoun accepted the proposal by signature at some later date, after learning RK would, in fact, be Ambling's choice for the foundation subcontract on the Grambling project.

This conclusion is supported not only by defendants' own version of the story: that RK sought an estimate on the rebar in advance of even submitting its bid for the subcontract to Ambling, but also by the testimony of CMC employee Matt Fagan, who testified that one of the ways a prospective purchaser can accept a CMC proposal and convert the proposal, which generally contains all the terms and conditions of the proposed work, into a contract, is to sign the acceptance signature block on the first page of the proposal.[52] Thus, although as we will discuss further below, the terms of the contract are unknown to the court at this time, Calhoun's intent to be bound to the proposal is clear and his newly filed affidavit is, indeed, the only evidence purporting to establish a genuine issue of fact as to his intent to perfect a contract of sale between CMC and RK. Moreover, the affidavit directly contradicts Calhoun's prior testimony, cited above, concerning this intent. Finally, the affidavit is unsigned, undated and is not notarized, falling far short of the requirements of Fed. R. Civ. P. 56(e) and appearing in the nature of a wholly self-serving declaration. Under these

---

[51] R. 77-1 at p. 1.

[52] Deposition of Matt Fagan [R. 78-2] at 16:12-16.

> Q   When you say "sign our contract," what do you mean?
>
> A   We have a spot on the bottom of our proposal for the buyer to put a signature on it.
>
> Q   And that's all they would do to execute the contract would be to sign the proposal?
>
> A   Yes.

circumstances, we find that CMC's motion to strike is proper and should be granted as to the entire affidavit pursuant to Rule 56(e) and applicable Fifth Circuit jurisprudence as cited above.

We now return to CMC's underlying motion for summary judgment. We must determine if the evidence before us demonstrates the existence of a valid contract of sale under Louisiana law. As the movant, CMC bears the burden of showing that the parties consented or reached a "meeting of the minds" as to thing and price in order to establish the existence of a contract between the parties.[53]

CMC asserts that the signed proposal constitutes a "lump sale" pursuant to La. Civ. C. Art. 2458. CMC points out that the proposal designates the price of $134,708 for 65 tons of rebar, which it argues is indicative of a lump sale, since no price per ton is assigned. Under La. Civ. C. Art. 2456, CMC asserts that the sale was perfected as soon as RK consented by signature to the thing (the rebar) and the price ($134,708) even though, at the time Calhoun signed on behalf of RK, CMC had not yet delivered the rebar and RK had not yet paid the agreed price.

Defendants deny, first, that any contract exists, characterizing the proposal as merely an estimate. Ambling adds, alternatively, that, although the term "lump sum" is used in the proposal, it was actually a sale by measure because the lump sum price was calculated by multiplying price per ton by the number of tons RK could expect to need for the Grambling project. Ambling also points out that the two orders of rebar by RK were specified by ton and the price charged for each was a function of the price per ton used in CMC's proposal. Citing La. Civ. C. Art. 2458, Ambling urges that the sale of the rebar was never perfected because the 65 tons of rebar were not weighed

---

[53]La Civ. C. Art. 2439; Alco Collections, Inc. v. Poirier, 680 So.2d 735 (La. App. 1 Cir. 1996); Benglis Sash & Door Co. v. Leonards, 387 So.2d 1171, 1172-73 (La. 1980); Hearon v. Davis, 8 So.2d 787 (La. App. 2 Cir. 1942).

out or measured and, as such, CMC has no cause of action as to its purported sale.

We agree with CMC's contention that the portions of the proposal, Continuing Guaranty and Joint Check Agreement available to us demonstrate a meeting of the minds as to both thing and price. It's clear that RK understood that it could count on receiving 65 tons of rebar from CMC for the guaranteed price of $134,708. Thus, we find that some form of a sale was contemplated by offer (the Proposal) and acceptance (Calhoun's signature).[54]

We reject defendants' assertion that it was impossible for Mitch Benefield, as a CMC sales representative, to enter into a contract before a purchaser's credit was approved.[55] Defendants cite the deposition testimony of Matt Fagan[56] as evidence that any purported contract could not be binding without prior credit approval, but the court finds contradictory testimony from other CMC employees Tracy Porter ("Porter")[57] and Dee Griffith ("Griffith")[58] stating that it is possible for a contract to be negotiated between the parties before credit approval and that, according to Porter, delivery of the materials is simply withheld until credit is verified in such an instance.

Although we are assured that the Proposal was accepted, contemplating some form of sale,

---

[54] Although, as noted above, Calhoun's signature accepting the proposal is undated, it appears that the acceptance must have occurred within thirty (30) days of September 18, 2006 (the date the proposal was issued) because it does not contain an additional cost per ton pursuant to the "price escalation" provision on page 2 of that document.

[55] R. 77 at pp. 7 - 8; R. 78 at pp. 6 - 7.

[56] Deposition of Matt Fagan [R. 78-2 at 21:4 - 22:7.

[57] Deposition of Tracy Porter [R. 78-6] at 14:16 - 15:9.

[58] Deposition of Dee Griffith [R. 78-5] at 11:14 - 25.

the additional terms of the contract, such as any notice required prior to order,[59] default provisions or reservation of rights remain unknown and, accordingly, we deem the contract ambiguous.

The court agrees with defendants' argument that the price of the rebar was, in practice, determined per ton despite the inclusion of the term "lump sum." This is supported by the evidence of the first two orders between the parties, in which the price due was calculated according to how many tons were ordered, as well as the proposal's "price escalation" provision,[60] which raises the price per ton when the proposal is not accepted within thirty (30) days of its issuance.

We also agree with defendants' claim that the rebar contemplated in the signed proposal constituted a portion of a larger mass which must, under the terms of the proposal, be "individualized" by cutting, bending, bundling and tagging.[61] Pursuant to La. Civ. C. Art. 2457, ownership is not transferred and no sale is perfected until the rebar is individualized and the portion ordered by RK is cut, bent, bundled and tagged and, thus, allocated to the contract.[62] Thus, the signed proposal is in the nature of a contract to sell or an executory contract and plaintiff's only claim is for damages resulting from any breach it may prove, unless the right of specific performance is reserved in the contract itself.[63] Given the missing pages of the contract between the parties in this

---

[59]Ambing's opposition to the motion points out the testimony of Johnny Young, a CMC detailer, stating that contracts of this sort usually contain a provision requiring at least one week's notice before a load of rebar is ordered. See R. 78 at p. 8.

[60]R. 44-3 at p. 2.

[61]Id. at p. 1.

[62]In re Evangeline Refining Co., 37 B.R. 450, 453 (W.D. La. 1984) (citing Succession of Welsh, 35 So. 913 (La. 1904)).

[63]Edgwood Co. v. Falkenhagen, 92 So. 703 (La. 1922); State v. Shields, 34 So. 673 (La. 1903); Witt Shoe Co. v. Seegars, 47 So. 444 (La. 1908); Bounds v. Makar, 493 So.2d 268 (La.

case, it is not possible for the court to determine whether or not plaintiff's alleged delay in providing the rebar requested in the third order and/or RK's decision to obtain the rebar from a third party and cease making orders on the contract to sell were breaches and, further, whether or not the right of specific performance was reserved unto the parties. Accordingly, summary judgment is inappropriate at this time due to remaining material fact questions concerning breach[64] and available remedies. Plaintiff's motion will be denied insofar as it seeks judgment in its favor for the remaining balance on the contract.

Ambling further asserts that, whatever this court's judgment may be, it should not apply to Ambling because the Joint Check Agreement is unenforceable due to a lack of consideration.[65] Specifically, Ambling asserts that it received no consideration for its guarantee of payment and promise to issue checks jointly in the name of RK and CMC and, under Louisiana law, a contract without cause is invalid. We reject this reasoning and find that the contract to sell, executed by RK and CMC upon Calhouns acceptance of the offer by signature, was subject to the suspensive condition of credit approval.[66] Such a contract to sell did not become effective until CMC approved RK's credit. It appears that CMC felt that RK did not have satisfactory credit history on its own to support the contemplated sale and required Ambling to execute the Joint Check Agreement and

---

App. 3 Cir. 1986); <u>Dunaway v. Woods</u>, 470 So.2d 574 (La. App. 1 Cir. 1985).

[64]The court also notes conflicting testimony between Calhoun and Johnny Young concerning whether or not Young told Calhoun that CMC could not provide the third shipment as quickly as it had provided the first two. <u>See</u> deposition of Young [R. 78-3] at 28:20 - 30:4 and deposition of Calhoun [R. 44-5] at 41:4 - 21.

[65]R. 78 at pp. 15 - 17.

[66]La. Civ. C. Art. 1767.

16

Calhoun to execute a Continuing Guaranty in order to lessen RK's credit risk.[67] Under these facts, CMC incurred the obligation to sell the rebar at the specified price once it verified RK's credit and was not already under an obligation to sell the rebar until such time as credit was approved.[68]

## IV. CONCLUSION

After consideration of the law and argument advanced by the parties, the court finds that CMC's motion to strike the affidavit of Calhoun should be GRANTED because the affidavit is the sole evidence purporting to create a genuine issue of material fact as to Calhoun's intent to contract with for the sale of 65 tons of rebar at the price of $134,708 and because it fails to conform to the requirements of Fed. R. Civ. P. 56(e). We further find that CMC's motion for summary judgment should be DENIED. Although the court is able to determine that the Proposal, Continuing Guaranty and Joint Check Agreement constitute a valid contract to sell, evidencing a meeting of the minds as to thing and price, the missing pages of the signed Proposal, upon which additional terms of the contract are said to appear, create ambiguity as to possible breaches and available remedies. Accordingly, genuine issues of material fact remain which prohibit summary judgment. Finally, the court finds that Ambling is a party to the contract to sell, jointly and severally liable with RK and Calhoun by virtue of the Joint Check Agreement, which we find contained lawful cause relating to the suspensive condition of credit approval which CMC required of RK before it would begin

---

[67] This conclusion is supported by the testimony of CMC employee Dee Griffith that when there is insufficient credit history available as to a client, CMC will require additional credit assurances. See R. 78-5 at 12:8 - 16.

[68] The court does not find that the suspensive condition of credit verification is one which may be null according to La. Civ. C. Art. 1770 as depending on the whim or the will of the obligor, but rather one which will be the result of a considered weighing of interests. Given the interest of CMC in securing new and profitable accounts, it is not reasonable to believe that credit would be denied without reason. See comment (d) to Art. 1770 and cases cited therein.

supplying rebar under the contract to sell.

**Alexandria, Louisiana**
**March 12, 2010**

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE