RECEIVED
IN ALEXANDRIA, LA
OCT 1 9 2010
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

---

**CMC STEEL FABRICATORS, INC. d/b/a CMC CONTRACTORS** — **CIVIL ACTION NO. 08-212**

**VERSUS** — **JUDGE TRIMBLE**

**RK CONSTRUCTION, INC., ET AL.** — **MAGISTRATE JUDGE HAYES**

---

**MEMORANDUM RULING**

Before the court are five (5) separate motions in limine filed by the parties to the above-captioned suit.[1] These motions were filed and briefed according to the court's order of September 16, 2010.[2] Our review of the record indicates that all briefs have been timely filed and that these motions are now appropriately before the court for disposition. We address each of the pending motions separately below.

## I. BACKGROUND

As explained in our prior ruling of March 12, 2010, concerning plaintiff's motions for summary judgment and to strike the affidavit of Ronald Calhoun, this case arises out of a construction project at Grambling State University ("Grambling"). Defendant Ambling Construction Company, LLC ("Ambling") was awarded a $33,295,000 contract to build a new student housing complex at Grambling in October of 2006. The contract called for the construction of seven (7)

---

[1] R. 129, 130, 132, 133, 134.

[2] R. 127.

student dormitories, a clubhouse and other related improvements, such as parking lots.

Defendant Ronald Calhoun ("Calhoun") submitted a bid to Ambling on behalf of his company, RK Construction ("RK"), in hopes of being awarded the subcontract to provide concrete and foundation work on the Grambling job. After obtaining a copy of the project plans from Ambling, Calhoun approached Lofland Company of Louisiana ("Lofland"), now plaintiff CMC Steel Fabricating d/b/a CMC Construction ("CMC"), concerning the amount and price of the rebar needed for the project. CMC drafted a proposal, dated September 18, 2006, which quoted a price of $134,708 for 65 tons of rebar, cut, bent, bundled and tagged.[3] Calhoun used CMC's price quote to formulate his bid for the subcontract. Ambling eventually awarded RK the subcontract.

RK completed a credit application at CMC on October 16, 2006.[4] Calhoun also executed a "Continuing Guaranty (Individual)" on the same day, which made him jointly and severally liable for all debts and liabilities owed by RK to CMC.[5] Moreover, Ambling executed a "Joint Check Agreement" on November 9, 2006, in which it guaranteed payment for all rebar ordered by RK in conjunction with the Grambling project.[6]

Thereafter, RK made two (2) orders of rebar from CMC: an order of 23, 832 pounds for $14,542.62 in November of 2006 and another order of 35,185 pounds for $22,375.58 in December

[3]R. 44-3 at pp. 1-2.

[4]R. 44-4 at pp. 1-2.

[5]R. 44-4 at pp. 3-4.

[6]R. 44-6.

of 2006.[7] The parties do not dispute that RK paid for both of these 2006 orders.[8] Calhoun claims that he contacted CMC in December of 2006 to place a third order for rebar, but was told by CMC employee Johnny Young that, due to a shortage of staff and the intervening holidays, CMC would not be able to provide this third shipment as quickly as it provided the first two orders.[9] Thereafter, RK placed an order for rebar with another manufacturer.[10] On or about February 15, 2007, Calhoun informed CMC that it found another rebar supplier and, thus, would not be placing further orders with CMC.[11]

CMC presented RK with written demands for payment of $100,760.21, the amount it claims remains due under the contract between the parties.[12] Defendants deny that any balance is owed to CMC under the theory that the documents executed among them did not constitute a perfected contract, but rather, an estimate for prospective purchases.[13]

CMC filed this suit in February of 2008 seeking a judgment in the full amount of the balance claimed, plus 1.5 % interest per month from the date when the balance became due, along with all reasonable attorney fees under law and contract and other just and equitable reliefs.[14] CMC was

---

[7]R. 44-7 at pp. 5-8.

[8]R. 44-7 at pp. 1-2.

[9]R. 77-1 at p. 2.

[10]Id.; R. 44-2 at p. 5; R. 78-5 at pp. 8-10.

[11]Id.

[12]R. 44-9, 44-10.

[13]R. 77, 78.

[14]R. 1 at pp. 4-5.

granted leave and amended its complaint, adding Ambling as a defendant in January of 2009.[15] Thereafter, Ambling was granted leave and filed its cross claim against RK and Calhoun.[16] CMC amended its complaint a second, third and fourth time in order to demonstrate diversity jurisdiction and to further specify reliefs sought from defendants.[17]

CMC filed a motion for summary judgment alleging that no genuine issue of material fact remained as to the amount owed to defendants under what it argued was a valid, perfected contract under Louisiana law.[18] CMC also filed a motion to strike the affidavit of Calhoun, filed in support of defendants' memorandum in opposition to the summary judgment motion.[19] In our memorandum ruling of March 12, 2010, the court found that the portions of the contract before it represented an executory contract, or a contract to sell, and that genuine issues of material fact remained as to the terms and conditions of that contract, making summary judgment inappropriate at that time. Under our reasoning, plaintiff is only entitled to claim damages resulting from any breach it may prove unless it can demonstrate that the contract expressly reserved the right of specific performance unto plaintiffs.[20]

We will address the pending motions in limine in light of this case history.

---

[15]R. 24, 26.

[16]R. 36-38.

[17]R. 47, 66, 67.

[18]R. 44.

[19]R. 85.

[20]R. 94 at pp. 15-16, n. 63.

**II. CMC's Motion in Limine to Exclude evidence or testimony concerning expected "profits" or "costs" to CMC of performance under the contract at issue[21]**

CMC urges this court to exclude evidence or testimony concerning expected "profits" or "costs" to CMC of performance in this case because it argues that the sole relief sought is specific performance. CMC's motion reviews its theory that a valid and enforceable lump sum contract exists between the parties pursuant to La. Civ. C. Arts. 2456 and 2458. Under CMC's theory of recovery, it argues that evidence of lost profits or costs incurred by it is not relevant and should be excluded under Fed. R. Evid. 401 and 403.

In response, defendants assert that they do not oppose the granting of CMC's motion, provided such evidence is off-limits to all parties, rather than just to defendants.[22] The court agrees that the evidentiary exclusion should apply equally to all parties and, thus, will issue an order excluding evidence of lost "profits" or incurred "costs" at the trial of this matter.

**III. Ambling's motion in limine to exclude CMC's responses to Ambling's Third Set of Interrogatories and Requests for Production[23]**

Ambling's first motion in limine seeks an order from this court excluding CMC's responses to its Third set of Interrogatories and Requests for Production on the basis that CMC's responses were untimely, prejudicial and incomplete.

We note at the outset that, while the discovery deadline was originally set for July 1, 2010,

[21]R. 129.

[22]R. 150.

[23]R. 130.

such deadline was extended by the court to August 15, 2010.[24] Ambling asserts that it propounded these interrogatories and requests for production upon CMC on August 3, 2010. Under Fed. R. Civ. P. 33 and 34, CMC had thirty (30) days in which to respond, making its response due on or before Thursday, September 2, 2010. CMC's responses were received on September 23, 2010, twenty-one (21) days after they were due. CMC asserts that it contacted Ambling on September 17, 2010 to apologize for the delay and to request a "brief extension" in which to complete its responses and that Ambling refused this request. As noted by CMC in its opposition, Ambling's decision to propound this third set of discovery requests less than thirty (30) days before the expiration of the discovery deadline left Ambling without recourse in the event that CMC answered late or not at all.[25] The court has carefully reviewed Ambling's second and third sets of discovery requests and finds that its third set seeks the same information as the second and was necessitated by CMC's incomplete answers to that second set.

Having reviewed Ambling's Third Set of Interrogatories and Request for Production, along with responses provided by CMC, the court finds that only Interrogatory No. 1 and Request for Production No. 1 remain relevant in light of the court's intention to exclude all evidence of incurred costs and lost profits at the trial of this matter. Interrogatory No. 1 requests the name, address, telephone number, email address, CMC employment status and job title of any individual responsible for or with knowledge of the transfer or allocation of steel or any other supplies for the purported

---

[24]R. 101.

[25]Paragraph I(B) of this court's Standing Order Governing Pretrial Procedure states that "[t]he court will not compel discovery sought later than one hundred twenty (120) days prior to trial nor consider motions to compel or for a protective order filed later than ninety (90) days prior to trial."

contract at issue.[26] Similarly, Request for Production No. 1 requests all supporting invoices, receipts, documentation or physical evidence of such transfers or allocations referenced in Interrogatory No. 1.[27] The court finds that this interrogatory and request for production seeks production of relevant evidence pertaining to CMC's inventory and order fulfillment procedures and that these procedures are reasonably relevant to Ambling's defense against CMC's claim in this case.

In response to this interrogatory and request for production, CMC listed, for the first time on any discovery response, the names of four (4) potential witnesses: Rob Dailey, Mike Trull, Mary Lou Harris and Lynn Rivera. Ambling complains that the late revelation of these witnesses only six (6) weeks before trial prejudices its ability to conduct discovery. CMC opposes the exclusion of Rob Dailey and Mike Trull on the basis that these person were disclosed to Ambling in prior discovery responses and deposition testimony. CMC does not oppose the exclusion of Mary Lou Harris and Lynn Rivera on the basis that it does not intend to call these individuals as witnesses at trial.

The evidence before the court demonstrates that neither Mike Trull, nor Rob Dailey were disclosed in prior discovery responses by CMC. Deposition testimony cited by Ambling affirms that, though Dailey was briefly mentioned in deposition testimony given by both David Heith and Jose Jiminez, these brief mentions did not relieve CMC of its obligation to identify these persons as soon as they became aware that they may possess information relevant to the case and may be called as witnesses in this matter. To find otherwise would be diminish the role and importance of interrogatories and request for production in the discovery process, a result not tolerable under Fed. R. Civ. P. 33 and 34. Accordingly, we find that neither party shall be permitted to call Mike Trull

---

[26] R. 130-2 at pp. 5-6 of 48.

[27] Id.

or Rob Dailey as witnesses at the trial of this matter. We find that our exclusion is warranted in order to prevent what we perceive as blatant prejudice to Ambling resulting from the late identification of witnesses by CMC. To the extent that CMC has previously represented that it will not call Mary Lou Harris or Lynn Rivera, we find that Ambling's motion in limine is moot as to these individuals. The court will permit evidence and testimony from the remainder of the individuals listed in CMC's response to Interrogatory and Request for Production No. 1.

## III. Ambling's Motion to Exclude Testimony of Jessee Smart and Any Other Expert Testimony Offered by Plaintiff Under Federal Rule of Evidence 702[28]

Ambling's second motion in limine seeks an order from this court excluding any testimony by Jessee Smart ("Smart") on behalf of CMC because CMC failed to identify him as a witness until August 13, 2010, two (2) days before the discovery deadline. CMC opposes the motion on the basis that it has not listed Smart as a witness in this case and does not intend to call him, making the issue moot. CMC asserts that, instead, it has listed Rob Dailey, addressed in our prior discussion of Ambling's first motion. To the extent that CMC agrees that it will not call Smart as a witness, we agree that the motion is moot. We find, however, that CMC's description of Dailey as "the individual responsible for all business development, production and transportation in Oklahoma, Arkansas and North Louisiana areas" as further evidence that CMC's failure to identify Dailey as a potential witness in this case prior to its September 23, 2010 discovery responses is without justification.[29] Accordingly, we reiterate that Dailey will not be permitted to testify at trial in order to avoid undue prejudice to defendants.

---

[28]R. 132.

[29]R. 151 at p. 2.

Our review of CMC's pretrial statement indicates that it does not intend to call any other previously undisclosed expert witnesses. To the extent that this is CMC's intention, the issue is moot. The court cautions that, to the extent that CMC seeks to offer such testimony, it will not be permitted at trial on the basis that it has made no expert witness disclosures in this case as required by this court's standing order.[30]

## IV. Ambling's Motion to Deem Plaintiff's Responses to Ambling's Request for Admissions of Fact as Admitted[31]

Ambling's third motion in limine seeks an order from this court deeming certain requests for admission of fact as admitted. Ambling asserts that CMC's refusal to admit certain facts persists even in light of Magistrate Judge Hayes' ruling directing CMC to supplement its admissions where deposition testimony cited by CMC demonstrates that facts should be admitted.

Ambling propounded its Second Set of Interrogatories and Request for Production upon CMC on May 30, 2010. CMC provided its responses on June 10, 2010, denying each request "as written" and referring Ambling to prior deposition testimony by CMC employee Tracey Porter.[32] Based on these responses and CMC's responses to Ambling's Second Set of Interrogatories and Request for Production, Ambling filed a motion to compel, which was granted by the court on August 2, 2010. Magistrate Judge Karen Hayes issued a ruling compelling CMC to supplement its responses to Ambling's Request for Admissions of Fact on the basis that the deposition testimony

[30] Standing Order Governing Pretrial Procedure at ¶ I(D).

[31] R. 133.

[32] R. 130-2 at pp. 24-26 of 48.

cited by CMC with each denial indicated that these facts should have been admitted.[33] Judge Hayes specifically rejected CMC's proffered excuse that, because these requests for admission were addressed to facts about which prior deposition testimony had been offered, no admission was necessary.[34]

Ambling's third motion asserts that, though CMC has supplemented its responses, it continues to deny facts which should be admitted and that its conduct is in bad faith given Magistrate Judge Hayes' prior ruling on these issues. CMC opposes Ambling's motion on the basis that, while it continues to object to the terminology and wording used in Ambling's requests for admission, it has actually admitted the substance of these requests already.[35]

Our review of CMC's opposition to Ambling's motion reveals that CMC has, in fact, admitted to each of Ambling's requests, though it takes issue with the terminology used in those requests. We agree with CMC that many of its objections to terminology are consistent with its theory of recovery in this case and are not motivated by bad faith.[36] However, to the extent that prior denials were based on the theory that prior deposition testimony addressing the fact questions at issue relieved CMC of its obligation to admit certain facts, we echo the sentiment of Magistrate Judge Hayes that such position is indefensible under the Federal Rules of Civil Procedure pertaining to discovery.

Given our satisfaction that CMC has admitted to those substantive items which it must under

---

[33]R. 114.

[34]Id.

[35]R. 152.

[36]Id. at pp. 3-4.

the deposition testimony cited, we are content that the issues for our consideration are succinct and do not require our further intervention at this time. Accordingly, we decline to grant Ambling's third motion in limine.

## V. Ambling's Motion to Exclude Testimony of Jessee Smart and Evidence Produced in Plaintiff's Third Supplemental Responses to Ambling's Second Set of Interrogatories and Requests for Production[37]

Ambling's fourth motion seeks an order from this court excluding the testimony of Jessee Smart and, additionally, all evidence produced in CMC's Third Supplemental Response to Ambling's Second Set of Interrogatories and Request for Production of Documents. Ambling asserts that exclusion of this evidence is warranted because CMC deliberately misled defendants by stating that the documents requested by Ambling "may no longer be available based on CMC's document retention policies and practices which, in certain circumstances, may be state, branch or location specific."[38] Moreover, Ambling points out that the CMC employee designated to respond to Ambling's document requests, Jose Jiminez, was unfamiliar with CMC's document retention policies, making CMC's assertion of this excuse for its lack of document production hollow.[39] Ambling asserts that CMC did, in fact, know of the existence and location of these documents and was merely waiting until its requested protective order was in place before disclosing them to opposing counsel in its August 23, 2010 Third Supplemental Responses to Ambling's Second Set of Interrogatories. Ambling points out that the protective order was put in place on August 11, 2010,

---

[37]R. 134.

[38]See, e.g., R> 130-2 at pp. 26 of 48.

[39]See R. 157-1.

only four (4) days before the expiration of discovery in this case. Thus, argues Ambling, CMC's vague statement indicating that it did not know whether or not the requested documents were still in existence was a misrepresentation to this court.

CMC argues that Magistrate Judge Hayes' memorandum ruling of August 2, 2010 states that "the court is inclined to agree that the requested information warrants protection," making its withholding of these documents until a protective order was in place reasonable. CMC further argues that delays in the implementation of the protective order are attributable to Ambling. Specifically, CMC points to emails between counsel that it believes evidence plaintiff's attempts to reach an agreement as to the terms of the protective order in July of 2010. CMC also points out that, despite Judge Hayes' ruling on the issue, on August 4, 2010, RK Construction and Calhoun refused to agree to a protective order, which necessitated CMC's filing of its motion for protective order which was eventually granted by the court on August 11, 2010.

This court agrees with CMC that it was entitled to withhold production of the documents at issue until such time as the protective order contemplated in Judge Hayes' ruling was in place, but finds that CMC's refusal to level with Ambling as to whether or not such documents existed is indefensible. While the court is supportive of CMC's desire to protect proprietary information, we find no just reason for CMC's failure to at least list the types of documents it had in its possession. While it's likely that this issue is moot considering our determination above that evidence of incurred costs and lost profits should be excluded from the trial of this matter, we think it worth noting that we disapprove of CMC's tactic as to these documents. With respect to the testimony of Jose Jiminez that he was unfamiliar with CMC's document retention policies as he prepared discovery responses in this case, we echo the finding of Judge Hayes that there is no justification for CMC's ignorance

of its own documentary evidence, especially in light of plaintiff's substantial burden in this case. To continually skate the line between strategy and sanctionable conduct is to risk credibility with this court. Whether by negligence or design, CMC has not demonstrated pre-trial practice rising to the level of professionalism expected by this court.

This matter will be tried by bench on Monday, November 1, 2010 and, as such, any further evidentiary concerns not addressed in this ruling should be presented by objection during those proceedings.

The court will issue an order in conformity with our findings herein.

**Alexandria, Louisiana**
**October 19, 2010**

**JAMES T. TRIMBLE, JR.**
**UNITED STATES DISTRICT JUDGE**